WILLIAM CLARK vs. A. H. LINDEKE, Assignee.

July 22, 1890.

Insolvency—Contract held to Preclude Allowance of Claim.—A contract entered into between the appellant (plaintiff) and the assignors of the respondent under the insolvency act, considered and construed. *Held*, that by reason of said contract and its terms and conditions, appellant cannot be permitted to participate as a creditor in the distribution of the assets of the insolvents.

Appeal by plaintiff from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial of his appeal from the assignee's disallowance of the claim filed by him against the estate of Shotwell, Clerihew & Lothman, insolvent debtors.

*Jackson & Atwater* and *Charles B. Meyer*, for appellant.

*J. M. Shaw, Wilson & Lawrence,* and *Lusk & Bunn,* for respondent.

COLLINS, J. The respondent, assignee of the firm of Shotwell, Clerihew & Lothman, (which firm made an assignment for the benefit of their creditors on June 20, 1888,) rejected and disallowed a claim presented by this appellant against said firm for the sum of $150,000, whereupon the latter appealed to the district court. Upon

a trial of the merits, the district court, by means of its findings of fact and order for judgment, affirmed the action of the assignee. This appeal by the claimant is from an order refusing a new trial, and the result depends wholly upon our construction of a certain contract, bearing date February 15, 1887, in which the claimant was of the first part, and the above-mentioned firm parties of the second part. It is the contract or agreement referred to in *Clark* v. *Lindeke, supra,* p. 112, (decided at this term,) as the substitute for and as superseding one of earlier date between the same parties in relation to the same business matter, differing only as to dates and time of fulfilment, or, rather, of maturity. A recital found in the contract has been quoted at length in the opinion in the case mentioned, and the terms of the contract briefly stated, but it will not be out of place for us to quote that part of the instrument which we are called upon to examine and construe, as follows : "That no part of the said sum of $150,000 shall become due and payable until the 31st day of December, 1891, except as hereinafter provided. And it is further agreed that should the parties of the second part hereto, on or before the said 31st day of December, 1891, decide that they will no longer engage in the continuance and prosecution of their business, they shall first pay off and discharge all debts and liabilities incurred by them as copartners; and after such payment and discharge shall have been made, if there shall be sufficient assets belonging to them as copartners, they shall pay and satisfy in full to the said party of the first part, his executors, administrators, or assigns, the said sum of $150,000; and if there be not assets belonging to them as copartners sufficient to enable them to pay and discharge in full the said sum of $150,000, then they shall assign, set over, and deliver unto the said party of the first part all such assets as there may be, of every kind, nature, and description, belonging to them as copartners; and, after such assignment, delivery, and transfer shall have been made, the parties of the second part, their executors, administrators, and assigns, shall be released and discharged from any claim and demand of the party of the first part arising out of the aforesaid loan. And it is further agreed that, should the parties of the second part elect and determine to continue

their said business after the said 31st day of December, 1891, then the aforesaid loan of $150,000 shall be paid and discharged in full, upon such terms and conditions as may hereafter be mutually agreed upon by the parties hereto."

Although in these contracts, both original and superseding, it was asserted that the sum of $150,000 had been loaned and advanced by the party of the first part to those of the second, the trial court found from the testimony that one-half of this was made up of and represented $75,000 which the party of the first part had previously invested and lost as a special partner in the previously-existing firm of Shotwell, Clerihew & Lothman, at Cincinnati, while the other half was the amount, in part, of an indebtedness of the new firm, of the same name, to George A. Clark & Bro., a copartnership of which this appellant was the resident member; and it was this indebtedness which was considered and disposed of in the *Geo. A. Clark Case, supra.*

The appellant urges that the question here is whether he is or is not a creditor of the insolvents, and that no question of priority of right is in issue. But certainly there is but one thing for the assignee to learn through this litigation, and that is the standing of the appellant in relation to the assets which he has to distribute. If the appellant is a creditor and can share in the distribution, the assignee is concerned. If he is a creditor with a valid claim, enforceable as against the insolvents, but for some reason non-enforceable as against the estate held by the assignee, the latter has no interest whatever beyond discovering that fact. The controversy is over a disposition of the funds, and further than this the assignee is indifferent. Now, under the agreement, what where the obligations of Shotwell, Clerihew & Lothman, either as copartners or as individuals? Certainly of no positive nature. On the happening of a certain event they were to pay the full sum of $150,000, upon terms and conditions to be agreed on. In another contingency their obligation to pay became conditional. Should the firm elect and determine to continue its business subsequent to December 31, 1891, the sum mentioned should be paid and discharged in full, but upon terms and conditions thereafter and mutually to be settled. This part of the compact was unequivocal as to what should be done, provided the firm elected and

determined to remain in business after the day mentioned. But, should the partners elect and determine to discontinue their business, the other contingency would arise, and payment of the amount mentioned, or any portion of it, depended upon language which does not seem to be ambiguous. In the event of a discontinuance of the business, it was stipulated that the firm debts and liabilities should first be paid in full. This done, and only in case it were done, the appellant was to be paid. Should the assets, after liquidating the copartnership liabilities, prove insufficient to satisfy appellant's demand in full, the firm was to assign and set over unto this appellant all such assets as should remain, and of every character, belonging to them as copartners. And thereupon the members of the firm were to be released and discharged from any claim or demand arising out of the alleged loan, which, as we have seen, was not altogether a loan, but in part made up of the amount of money which appellant had invested as a special partner in the Cincinnati concern, and lost therein.

It is urged by respondent that as to this amount the appellant had no legal claim against his partners when the contract was entered into, in the absence of some new consideration, and, as against creditors, could have no claim whatsoever upon the assets of either the old or the new firm; but, under our construction of the contract, it is not essential that we pass upon the point. Now, the contract under consideration was entered into under peculiar circumstances, which need not be here detailed. Suffice it to say that these circumstances are sufficient to account for the terms and conditions, plainly and unmistakably set forth in the language used by the parties when wording this contract, in substance that, should the firm be warranted in continuing in business beyond a fixed day, then, by mutual agreement as to terms and conditions, the payment of the admitted (but, perhaps, not actual) indebtedness was to be provided for. If, upon the other hand, the business should turn out unremunerative, and the members of the firm determine to abandon it on or before that fixed day, no indebtedness remained against either member of the firm personally, and only against the firm in a certain contingency. Should they pay their general creditors in full,

and have surplus assets sufficient in value to meet and liquidate appellant's claim in full, this should be done. If not, all liability to appellant ceased upon the transfer to him of the firm assets remaining without regard to value. The decision provided for in the agreement was made by the insolvents when they voluntarily assigned on the 20th day of June, 1888, and it can be of no consequence that this determination was the result of, and in some degree compelled by, the insolvent condition of those who made it. Nor can the contract, so plainly written, be modified or controlled by the fact that creditors of the insolvents who desire to participate in the trust fund, must first file releases of their claims in full. Had the appellant desired to guard and protect himself against the present condition of affairs, he should have said so in the writing. We find no exceptions therein, and cannot be expected to insert terms or stipulations whereby he may be relieved, allowed to assert a claim against the insolvents, and participate in their assets with general creditors, after expressly agreeing not to do so.

Order affirmed.